DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TARA JOHNSON,<br><br>　　　　　Plaintiff,<br>v.<br><br>EASTERN IDAHO HEALTH SERVICES, INC., an Idaho corporation doing business as EASTERN IDAHO REGIONAL MEDICAL CENTER,<br><br>　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Tara Johnson, by and through her counsel of record, Casperson Ulrich Dustin PLLC, and as a cause of action against Defendant Eastern Idaho Health Services, Inc., an Idaho corporation doing business as Eastern Idaho Regional Medical Center, complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*; and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

1  –   COMPLAINT AND DEMAND FOR JURY TRIAL

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Tara Johnson ("Plaintiff") is a female citizen and resident of the United States of America, who resides in Bonneville County, Idaho.

5. Defendant Eastern Idaho Health Services, Inc., doing business as Eastern Idaho Regional Medical Center, ("Defendant"), is an Idaho corporation, with its principal place of business in Bonneville County, Idaho.

6. At all times relevant to this Complaint, Defendant regularly employed fifteen or more persons whose services were performed in the State of Idaho and was engaged in an industry affecting commerce. Consequently, Defendant's conduct is properly regulated by Idaho Code § 67-5901, *et seq.*; and 42 U.S.C. § 12101, *et seq.*

## FACTS COMMON TO ALL COUNTS

7. Plaintiff realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8. On or about May 28, 2013, Plaintiff was hired by Defendant to work as an x-ray tech in Defendant's Radiology Department. In or around later 2014/early 2015, Plaintiff became an MRI tech in Defendant's Radiology Department.

9. Plaintiff received favorable reviews and feedback on her work.

10. In 2015, Plaintiff injured her back while moving a patient. Plaintiff reported her injury and was sent to Defendant's in-house healthcare provider for injured employees.

11. Though Plaintiff's MRI showed she had a "dark disk," instead of referring Plaintiff to a specialist, Defendant's in-house provider for injured employees prescribed Plaintiff 800 mg ibuprofen and put Plaintiff on light duty for a week or two and then fully released Plaintiff back to work after approximately one month.

12. In late 2015/early 2016, Plaintiff again injured her back moving a patient. Plaintiff reported the injury, and this time, was referred to a specialist. The specialist informed Plaintiff that in addition to a "dark disk," she also had annular tears.

13. Nothing could be done to repair Plaintiff's injuries, and she was referred to a pain management doctor, whom she still sees to this day for treatment. Plaintiff's doctors advised her to avoid lifting, twisting, and pushing heavy things by herself.

14. Price was aware of both of Plaintiff's worker's compensation injuries, her recommendations from her physicians to avoid lifting, twisting, and pushing heavy things, and that Plaintiff's injuries had resulted from moving patients on her own.

15. Plaintiff's performance continued to be excellent. She received numerous "kudos" from patients and hospital management. Plaintiff was so successful at her job that in January 2017 Plaintiff was informed by her supervisor, Kaylynne Price ("Price"), that she wanted to promote Plaintiff to the position of MRI coordinator, and to start the training process for that position.

16. Plaintiff's brother-in-law, who previously worked in Defendant's Radiology Department, sued Defendant for disability discrimination. Shortly after Plaintiff was told Defendant

wanted to promote her, Plaintiff's brother-in-law was deposed in his lawsuit, and Plaintiff's brother-in-law began deposing various employees and managers of Defendant.

17. Plaintiff was identified as a witness in her brother-in-law's case by her brother-in-law.

18. During this time, Price began asking Plaintiff questions about Plaintiff's brother-in-law, such as how he was doing, where he was working, and about his new job, even though Price had never asked Plaintiff questions about her brother-in-law before.

19. Price's questions made Plaintiff uncomfortable. Plaintiff felt like Price was pumping Plaintiff for information about her brother-in-law and expected Plaintiff to provide it.

20. Shortly thereafter, Price issued Plaintiff a verbal warning on March 9, 2017, after Plaintiff had raised concerns about the competency of a new hire traveling MRI tech.

21. Plaintiff and her fellow employees raised concerns because the new MRI tech, who allegedly had 20 years of experience, was unable to perform even simple job tasks.

22. Price refused to address these concerns, and instead bullied other Radiology Department employees to assert that Plaintiff was not "welcoming" enough to the new MRI tech which Price then used as a pretextual basis to issue Plaintiff the verbal warning.

23. Price clearly saw merit in Plaintiff's complaint about the new MRI tech, as Price fired the new MRI tech a few weeks later due to her inability to do her job.

24. Price then put Plaintiff on the schedule for 24 hour call for the entire weekend of April 1st and 2nd with no other MRI techs on the schedule for any regularly scheduled shift, after Plaintiff had worked two ten hour shifts the two days prior with no lunches, and had also been called in overnight.

25. When Plaintiff was working her shifts that weekend, she became so fatigued she was concerned for her ability to do her job properly and safely. She contacted Price to see if she could schedule someone else for the second day of call.

26. Instead of addressing Plaintiff's request to have another MRI tech work the second 24 hour shift, Price merely offered Plaintiff a couple of days off during the next week.

27. Because Price did not address Plaintiff's concern about working another 24 hour call shift the following day, Plaintiff contacted Todd Russell ("Russell"), the Medical Imaging Director and explained her concerns about fatigue and patient safety.

28. Price found out Plaintiff contacted Russell and was very angry at Plaintiff. Price was able to get a couple of MRI techs to cover the morning and day call shifts, but Plaintiff was still required to take the overnight call shift.

29. Price subsequently issued Plaintiff a write-up for "negative interactions" and "inappropriate text messages" (referring to a text message Plaintiff sent to Price when asking for help, explaining the schedule Price imposed upon her was akin to the schedule Price imposed on another MRI tech who had quit due to scheduling).

30. The write-up required Plaintiff to meet with Price and Russell allegedly to learn how to communicate with others.

31. After Plaintiff met with Price twice and Russell twice, Price informed Plaintiff she had completed all of the meetings required of her, and Price prepared a memorandum for Plaintiff's personnel file stating she had successfully completed the requirements of the write-up and no further meetings were necessary.

32. In or around mid-June 2017, Price had scheduled Plaintiff in such a manner that she could not take a lunch break during her shift.

33. When Price found out the next day that Plaintiff had not taken a lunch break, she was angry with Plaintiff. She prepared a piece of paper for Plaintiff to sign falsely stating that Plaintiff had forgotten to clock out for lunch.

34. Plaintiff signed the sheet due to Price's insistence that she do so, but made a note that she did not actually take a lunch. Price became enraged and told Plaintiff, "That makes this document illegal!"

35. Price took the paper from Plaintiff, ripped it in half, and threw it in the garbage.

36. Shortly after the incident where Price insisted Plaintiff falsify her time card to claim a lunch she never took, Price issued Plaintiff a "final warning."

37. The "final warning" contained a write-up for failing to clock out for lunch. It also contained a write-up for an incident which occurred over four months prior when Price had told Plaintiff she needed to perform transporter work (not part of Plaintiff's normal job duties) during her entire shift by herself, which Plaintiff had explained she could not do because it required moving very heavy beds and patients by herself, and her doctor had instructed her to minimize strain on her back.

38. In response, Price told Plaintiff, "Well, you're not on worker's comp." Although Plaintiff was ultimately permitted to perform her normal MRI tech job duties, Price was clearly unhappy Plaintiff had raised concerns about the accommodation she needed for her back injury.

39. Approximately a month later, on August 7, 2017, Plaintiff received a text from her coworker asking if Plaintiff was coming in for her shift that day. Plaintiff realized that she had missed calls from her coworker and from Price when she saw the text.

40. Unbeknownst to Plaintiff, Price had changed her schedule without providing Plaintiff with notice of the change.

41. Plaintiff got to work as soon as she could. Price acted as if Plaintiff were somehow fully aware of the schedule change, even though Price had acknowledged to Plaintiff's coworkers that Plaintiff must have been relying on the prior schedule.

42. Plaintiff worked her shift the following day, August 8, 2017, but during her next shift on August 9, 2017, Price had a coworker take over Plaintiff's work duties and told Plaintiff she had to accompany her to HR. Plaintiff was told she was terminated, and was handed a termination notice which stated she was being terminated for a "no call/no show."

43. On or about January 19, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Idaho Human Rights Commission ("IHRC"), asserting disability discrimination against Defendant.

44. On or about April 16, 2019, Plaintiff received her Notice of Right to Sue.

45. Plaintiff has exhausted her administrative remedies.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
**(Disability Discrimination)**

46. Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff was disabled within the meaning of the ADAAA because she had an actual disability due to her prior back injury.

48. Plaintiff had a record of disability due to her back injury.

49. Plaintiff's disability substantially limited her major life activities and/or major bodily functions, including the ability to lift, twist, and push.

50. Plaintiff was a qualified individual able to perform the essential functions of her job with or without reasonable accommodations.

51. Defendant took adverse action against Plaintiff based upon her disability including issuing disciplinary action to Plaintiff after Plaintiff indicated she could not perform certain job tasks outside of her job description due to her disability, and terminating Plaintiff's employment.

52. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to her.

## COUNT TWO
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Disability Discrimination)

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

54. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by discriminating against Plaintiff by discriminating against Plaintiff based upon his disability.

55. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities. Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

## COUNT THREE
## VIOLATION OF AMERICANS WITH DISABILITIES ACT
### (Retaliation/Associational Discrimination)

56. Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff engaged in protected activity by objecting to direction to perform job tasks which were against her doctor's advice.

58. Plaintiff also was associated with her brother-in-law who sued Defendant for disability discrimination. Plaintiff was named as a witness in her brother-in-law's case. Plaintiff acting as a witness in her brother-in-law's ADA case constitutes a protected activity.

59. Plaintiff performed her job satisfactorily.

60. Defendant discriminated against Plaintiff and/or retaliated against Plaintiff due to her association with her brother in law and/or due to her engaging in protected activity under the ADA.

61. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job opportunities. Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to her.

62. Defendant's conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT FOUR
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
### (Retaliation/Associational Discrimination)

63. Plaintiff realleges and incorporates by reference paragraphs 1 though 62 as though fully set forth herein.

64. Defendant violated the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, by subjecting Plaintiff to retaliation and/or associational discrimination.

65. Defendant terminated Plaintiff's employment because of her exercise of rights under the ADA and/or due to associational discrimination.

9   –   COMPLAINT AND DEMAND FOR JURY TRIAL

66. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered and will continue to suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to damages, in an amount to be proven at trial, as wells as any equitable remedies available to her.

## COUNT FIVE
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Retaliation)

67. Plaintiff realleges and incorporates by reference paragraphs 1 though 66 as though fully set forth herein.

68. Defendant directed Plaintiff to falsely document she was not working, when she was, in fact, working.

69. Plaintiff complained about and objected to Defendant's direction to falsely document that she was not working at a time she was working.

70. As a result of Plaintiff's complaint about Defendant's direction to falsely document that she was not working at a time she was working, Defendant took adverse action against Plaintiff, including issuing Plaintiff a write-up, and terminating Plaintiff's employment.

71. As a direct and proximate result of Defendant's actions and/or failures to act, Plaintiff has suffered and will continue to suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to damages, in an amount to be proven at trial, liquidated damages, as wells as any equitable remedies available to her.

72. Defendant's conduct was willful or done with a reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages.

### ATTORNEY'S FEES

73. As a further direct and proximate result of Defendant's actions and/or failure to act,

Plaintiff has been compelled to retain the services of counsel, and have incurred and will continue to incur costs and attorney's fees. Plaintiff is therefore entitled to attorney's fees and costs incurred in pursuing this action pursuant to 29 U.S.C. § 216(b), 42 U.S.C. § 1981(b), 42 U.S.C. § 2000e-5(k).

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Plaintiff seeks the judgment of the Court against Defendant as follows:

1. For general and compensatory damages, and all other statutorily available damages, in an amount to be proven at trial;

2. For any equitable remedies available to her, including reinstatement;

3. For punitive damages;

4. For statutorily available costs and attorney's fees;

5. For prejudgment interest on all amounts claimed; and

6. For such other and further relief as the Court deems just and proper.

DATED this 31st day of May, 2019.

/s/
Amanda E. Ulrich, Esq.
Casperson Ulrich Dustin PLLC

C:\Users\Amanda\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\AEU\19691 Johnson\Pleadings\Complaint.wpd:dg

11 –   COMPLAINT AND DEMAND FOR JURY TRIAL